IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| ANDREW M. ORR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-815-HEH |
| ) | |
| KEYSTONE RV COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
### (Granting Defendants' Motions to Dismiss)

THIS MATTER is before the Court on Defendant Keystone RV Company's ("Keystone") Motion to Dismiss ("Keystone's Motion," ECF No. 13) and Camping World RV Sales, LLC's ("Camping World") Motion to Dismiss ("Camping World's Motion," ECF No. 21) (collectively, the "Motions"), filed on September 29, 2023, and October 6, 2023, respectively. On August 21, 2023, Plaintiffs Andrew M. Orr and Lori A. Orr (collectively, "Plaintiffs") filed their Complaint (ECF No. 1) alleging breaches of the Magnuson-Moss Warranty Act ("MMWA") and the Virginia Consumer Protection Act ("VCPA") against Keystone and Camping World (collectively, "Defendants"). (*Id.* ¶¶ 15–24.) Defendants seek to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Camping World's Mot. at 1; Keystone's Mot. at 1.) Camping World also asks the Court to strike Plaintiffs' jury demand, pursuant to Rule 39. (Camping World's Mot. at 1.)

The parties have filed memoranda supporting their respective positions, and the

Court heard oral argument on February 12, 2024. For the following reasons, the Motions will be granted.

## I. BACKGROUND

On September 9, 2022, Plaintiffs purchased a 2022 Keystone Montana 3791RD camper van from Camping World for $126,654.32. (Compl. ¶ 4.) At the time of purchase, Plaintiffs signed a Purchase Agreement (ECF No. 22-1)[1] with Camping World. (*See id.* at 1.) The Purchase Agreement contained a warranty disclaimer on the front page that reads as follows:

> **Dealer makes no guarantee or warranty, express or implied.** This vehicle is sold by Dealer "AS-IS" with no Dealer guarantee or warranty, implied or express. Dealer does not affirm or adopt any manufacturer warranty(s) available to this Unit or any of its components. **DEALER HEREBY DISCLAIMS AND EXCLUDES FROM THIS SALE ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS. BUYER(S) ACKNOWLEDGE THIS DISCLAIMER IS MADE IN CAPITALIZED, BOLD AND UNDERLINED FONT AND IS "CONSPICUOUS."**

(Purchase Agreement at 1.)[2] The back of the Purchase Agreement contained a separate warranty disclaimer and limitation of remedies which states:

> **DISCLAIMER OF WARRANTIES AND LIMITATION/EXCLUSION OF REMEDIES. DEALER MAKES NO GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS**

---

[1] The Court may consider contracts related to the sale of the camper at this stage because they are integral to the Complaint and Plaintiffs do not contest their authenticity.

[2] All quotes taken from the contracts between the parties appear as formatted in the contracts. However, the size of the font may differ.

> **FOR A PARTICULAR PURPOSE FROM THIS SALE TRANSACTION, AND SUCH WARRANTIES SHALL NOT APPLY TO THIS TRANSACTION OR THE UNIT. BUYER(S) UNDERSTAND AND AGREE THAT DEALER MAKES NO WARRANTY ON THIS UNIT AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CONSTITUTE OR CREATE ANY DEALER WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED. BUYER(S) UNDERSTAND AND AGREE THAT ALL TERMS OF THIS AGREEMENT ARE BINDING AND SHALL APPLY IN ALL INSTANCES, EVEN IF BUYER(S) ELECT TO PURCHASE AN EXTENDED SERVICE CONTRACT. BUYER(S) UNDERSTAND AND AGREE THAT THE EXPRESS TERMS OF ANY MANUFACTURERS WRITTEN WARRANTY, TO THE EXTENT ANY EXIST AND APPLY TO THE UNIT, CONTAIN AND CONSTITUTE BUYER(S)' EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THE UNIT MIGHT CONTAIN.**

(*Id.* ¶ 10.) During the transaction, Plaintiffs also signed an Extended Service Plan (ECF No. 22-2) and a Retail Installment Contract and Security Agreement (ECF No. 22-3).

The camper came with a one-year limited base warranty and a three-year structural warranty, provided by Keystone. (Compl. ¶ 5.) Keystone's Warranty Guide (ECF No. 30-1) contains a choice of law provision which reads:

> **THE LIMITED WARRANTIES WILL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF INDIANA. ANY AND ALL CLAIMS, CONTROVERSIES, AND CAUSES OF ACTION ARISING OUT OF OR RELATING TO THE LIMITED WARRANTIES . . . WILL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA . . . .**

(*Id.* at 7.)[3] The Warranty Guide also contained provisions relating to limitation of remedies and instructions on how owners should obtain warranty repairs. (*Id.* at 6, 12–

---

[3] When citing to the parties' exhibits, the Court employs the pagination assigned by the CM/ECF docketing system.

3

13.)

On November 14, 2022, Plaintiffs took the camper to Camping World for repairs. (Compl. ¶ 7.) There were numerous warrantied defects that needed to be repaired, including water damage, improperly installed items in the camper, faulty wiring, and leaking black water, among other things. (*Id.*) Ultimately, forty-four (44) separate issues were identified. (*Id.* ¶ 10.) Despite multiple attempts over 228 days, Camping World was unable to repair the issues and the camper remains at the repair facility. (*Id.* ¶¶ 8–12.)

On March 14, 2023, Plaintiffs informed Camping World, in writing, of the warranty defects. (*Id.* ¶ 13.) Since that date, Plaintiffs have been unable to communicate with Camping World because "all attempts to reach Camping World [] by phone calls or emails have been ignored." (*Id.* ¶ 14.) Camping World refuses to provide Plaintiffs with copies of "Buyer's Orders [,] Finance Sheets[,] . . . [and] repair orders prior to [the] date of purchase." (*Id.*)

Based on these facts, Plaintiffs brought the following claims against Defendants: Breach of Express and Implied Warranties under the MMWA (Count I); and Violation of the VCPA (Count II). (*Id.* ¶¶ 15–24.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992))

(internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

A court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

For a Rule 12(b)(6) motion, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute

5

about the document's authenticity." *Id.* "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Id.* (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) (internal quotations omitted) (alteration in original).

### III. CAMPING WORLD'S MOTION TO DISMISS

#### A. Camping World validly disclaimed implied warranties under the MMWA.

Camping World first argues that it cannot be held liable under the MMWA because it effectively disclaimed all warranties. (Camping World's Mem. in Supp. at 7–13, ECF No. 22.) Plaintiffs raise three (3) arguments in response. First, they assert that Camping World did not validly disclaim implied warranties under the MMWA because Camping World sold Plaintiffs a service contract, the Extended Service Plan. (Resp. in Opp'n to Camping World's Mot. ¶¶ 1–3.) Next, they argue that Camping World is attempting to resolve factual contests because there is a question as to whether Camping World is the company that will perform the service contract. (*Id.* ¶ 6.) Finally, Plaintiffs contend that the Purchase Agreement is unconscionable. (*Id.* ¶¶ 7–11.)

The MMWA prohibits sellers from disclaiming implied warranties in two (2) circumstances: "(1) [when] such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product." 15 U.S.C. § 2308(a). The statute defines a service contract as "a contract in writing to perform, over a fixed period of time or for a specified duration,

6

services relating to the maintenance or repair (or both) of a consumer product." *Id.* § 2301(8). When determining whether an implied warranty exists under the MMWA, courts look to the state law where the sale occurred. *Id.* § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.").

In order to disclaim implied warranties of merchantability under Virginia law, a written disclaimer must be "conspicuous" and mention "merchantability." VA. CODE ANN. § 8.2-316(2). To be conspicuous, the text must be "written, displayed, or presented [so] that a reasonable person against whom it is to operate ought to have noticed it." *Id.* § 8.1A-201(b)(10). Modifications to the text, such as capitalization, and contrasting font size, type, or color will serve to make a disclaimer conspicuous. *Id.*; *see Reibold v. Simon Aerials, Inc.*, 859 F. Supp. 193, 195–97 (E.D. Va. 1994) (finding that a disclaimer in "large, all-capitalized print set off from the rest of the text" was conspicuous). "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other. . . ." VA. CODE ANN. § 8.2-316(1).

Camping World asserts that the language in the Purchase Agreement validly disclaimed all implied warranties under Virginia law. (Camping World's Mem. in Supp. at 11–13.) The Court agrees. The warranty disclaimers provided in the Purchase Agreement were bolded, and some portions of the disclaimers were capitalized. They

7

unequivocally state that Camping World disclaims "**ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTY OF MERCHANTIBILITY**." (Purchase Agreement at 1.) The bolding, capitalization, and underlining renders this language conspicuous, and it validly disclaims all implied warranties under Virginia law.

Though Camping World sold Plaintiffs an Extended Service Plan, which qualifies as a service contract under the MMWA, the Extended Service Plan is between Plaintiffs and a third-party. The Extended Service Plan states that both the administrator and the obligor of the plan is United Service Protection Corp. ("USPC"). (Extended Serv. Plan at 1.) The MMWA prohibits a supplier from disclaiming warranties when the "*supplier enters into a service contract with the consumer....*" 15 U.S.C. § 2308(a) (emphasis added). Here, Camping World did not enter into a service contract with Plaintiffs because the Extended Service Plan was a contract between Plaintiffs and USPC. *See Mountford v. LTD, Inc.*, No. 1:19-cv-530, 2020 WL 3261451, at *5 (E.D. Va. Apr. 16, 2020) (finding that a service contract with a third-party did not invalidate the defendant's waiver clause). Thus, Camping World is not prohibited by the MMWA from disclaiming implied warranties.

Plaintiffs seemingly ignore the language that establishes USPC as the administrator and obligor of the Extended Service Plan and, instead, imply that "Good Sam Enterprises" is a party to the contract because the service contract is titled "Good Sam Extended Service Plan." (Resp. in Opp'n to Camping World's Mot. ¶ 6; *see*

8

Extended Serv. Plan at 1.) Plaintiffs go on to argue that Good Sam Enterprises owns Camping World. (Resp. in Opp'n to Camping World's Mot. ¶ 6.) However, Plaintiffs do not allege in their Complaint that Camping World is owned by Good Sam Enterprises, nor do they provide any evidence for this beyond citing a Wikipedia page. (*See id.*) Here, the plain language of the Extended Service Plan controls, and, because Plaintiffs entered into the contract with USPC, any relationship between Camping World and Good Sam Enterprises is irrelevant.

Finally, the Court finds that Plaintiffs failed to allege unconscionability. Plaintiffs do not bring an unconscionability claim in their Complaint, nor do they describe any circumstances that would indicate unconscionability. The Complaint merely states that Plaintiffs bought the camper from Camping World and that Camping World sold them a service contract. (Compl. ¶¶ 4–5.) For the first time, Plaintiffs allege in their Response that many of the provisions of Camping World's contract are unconscionable and unenforceable because they unreasonably favor Camping World and deprive Plaintiffs of meaningful choice. (Resp. in Opp'n to Camping World's Mot. ¶ 11.) Plaintiffs fail to specify which contract was unconscionable, or which provisions were unconscionable. Plaintiffs also do not detail any facts that support their unconscionability claim but baldly "assert unconscionability and unenforceability" in their Response. (*Id.*)

Plaintiffs cite to *Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), and argue that they are "not required to show or prove their case on unconscionability at this stage." (Resp. in Opp'n to Camping World's Mot. ¶ 11.) However, in *Carlson*, the

plaintiffs listed ten (10) different reasons why the agreement was unconscionable in their complaint. 883 F.2d at 294. In other words, the plaintiffs in *Carlson* sufficiently pled unconscionability. Here, Plaintiffs did not even raise an unconscionability claim in their Complaint, much less adequately plead it. Accordingly, Plaintiffs' MMWA claim against Camping World will be dismissed.

### B. Plaintiffs did not adequately plead their VCPA claim, and it fails as a matter of law.

Camping World next argues that Plaintiffs' VCPA claim should be dismissed because it is insufficiently pled. (Camping World's Mem. in Supp. at 13–18.) Plaintiff alleges violations of three (3) provisions of the VCPA. (Compl. ¶¶ 22–23.) These provisions prohibit "a supplier in connection with a consumer transaction" from:

> 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . .[;]
> . . .
> 10. Misrepresenting that repairs, alterations, modifications, or services have been performed or parts installed; [and]
> . . .
> 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]

VA. CODE ANN. § 59.1-200(8), (10), (14). "To properly state a cause of action under the VCPA, [a] [p]laintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010) (citing VA. CODE ANN. § 59.1-200; *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009)). Because they involve allegations of fraud, VCPA claims are subject to Rule 9(b)'s heightened pleading standard, which requires plaintiffs to "state

10

with particularity the circumstances constituting fraud or mistake." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 656 (W.D. Va. 2013) (quoting FED. R. CIV. P. 9(b)) (internal quotations omitted). Misrepresentation cases brought under the VCPA also require plaintiffs to show both "reliance and damages." *BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) (citing *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (2014)).

Camping World's Motion largely centers around the argument that Plaintiffs failed to plead adequate factual details to support their VCPA claim. (Camping World's Mem. in Supp. at 13–16.) Camping World's argument is sound. Plaintiff does not discuss a single advertisement or representation that Camping World made during the sale of the camper. Instead, Plaintiffs' Complaint contains a barebones allegation that Camping World violated Va. Code. § 59.1-200(A)(8) "by falsely maintaining the camper would be fit for its reasonable intended purpose" and that Camping World violated Va. Code § 59.1-200(A)(10) "by misrepresenting that repairs, alterations, modifications, or services had been done when they had not." (Compl. ¶ 23.) These statements are legal conclusions, consisting of vague statutory recitations. They are insufficient to meet the normal pleading standard, much less the heightened pleading standard under Rule 9.

Even if Plaintiffs had adequately pled their VCPA claim, it would still fail as a matter of law. It appears that Plaintiffs' VCPA claim primarily involves Camping World's failure to provide repair orders for repairs completed prior to the date of purchase. (*See* Compl. ¶¶ 14, 22–23; Resp. in Opp'n to Camping World's Mot. ¶ 12.)

11

However, Plaintiffs did not request such repair orders until *after* Camping World began attempting to repair the camper. (Compl. ¶ 14.) Camping World's actions during the course of the repairs are not covered by the VCPA because they were not part of the consumer transaction: the sale of the camper. *See Salehi v. Wells Fargo Bank, N.A.*, No. 1:11-cv-1323, 2012 WL 2119333, at *6 (E.D. Va. June 11, 2012) (dismissing a VCPA claim because the misrepresentations were not adequately connected to a consumer transaction). Further, the Purchase Agreement contains a merger clause which states that the Purchase Agreement "comprise[s] the entire Agreement" between the parties and that Plaintiffs did not rely on any "discussions, negotiations, advertisements, representations, and affirmations of fact" not contained in the Purchase Agreement. (Purchase Agreement at 1.) Because the repairs are not covered by the VCPA and the merger clause controls, Plaintiffs' VCPA claim will be dismissed.

### C. Camping World's request that the Court dismiss Plaintiffs' demands for consequential damages and a jury trial is premature.

Camping World asks the Court to strike Plaintiffs' request for consequential damages and a jury trial because both are waived under the Purchase Agreement. (Camping World's Mem. in Supp. at 19–20.) Though the Court will grant Camping World's Motion to Dismiss, it will also give Plaintiffs leave to amend their Complaint to cure the deficiencies therein. Thus, it would be premature to grant Camping World's request at this stage. Accordingly, Camping World's request to strike Plaintiffs' demand for consequential damages and a jury trial will be denied. However, if Plaintiffs choose

12

to amend their Complaint, Camping World may raise this argument again.

## IV. Keystone's Motion to Dismiss

### A. Plaintiffs' MMWA claim against Keystone is not sufficiently pled.

Keystone contends that Plaintiffs' MMWA claim should be dismissed because Plaintiffs failed to exhaust their remedies according to the terms of the limited warranties. (Keystone's Mem. in Supp. at 4–5, ECF No. 14.) Keystone states that, under the Warranty Guide, Plaintiffs' only remedy was repair and that Plaintiffs failed to contact Keystone to repair the camper. (*Id.*)

Plaintiffs do not dispute that the Warranty Guide contains the terms of the limited warranties. (*See* Resp. in Opp'n to Keystone's Mot. ¶ 3, ECF No. 30.) However, Plaintiffs point out that the Warranty Guide recommends that customers contact their selling dealer to obtain repairs. (*Id.* ¶¶ 3–4.) Specifically, the Warranty Guide states, in relevant part:

> We recommend you contact your selling dealer first. If additional assistance is needed, Keystone has a network of authorized dealers, service centers and mobile service providers that are the exclusive source of parts, service and warranty support. However, if for any reason, your issue is not resolved by your dealer, Keystone is always willing to help so please do not hesitate to contact us.

(Warranty Guide at 12.) Plaintiffs state that, because they brought the camper to Camping World, one of Keystone's authorized dealers, they abided by the terms of the warranty. (*Id.* ¶ 4.) Additionally, Plaintiffs assert that Camping World is an agent of Keystone. (*Id.* ¶ 5.) Thus, they contend there is a question of fact as to whether Plaintiffs

13

provided notice to Keystone by giving Camping World notice of the defects. (*Id.*)

Keystone responds that Plaintiffs have not sufficiently pled an agency relationship between Keystone and Camping World. (Keystone's Reply at 5–8, ECF No. 33.) Further, Keystone asserts that such an allegation conflicts with the Purchase Agreement, which contains a clause titled "DEALER NOT AGENT OF MANUFACTURER" and states that "Dealer is in no respect the agent of the manufacturer." (*Id.* at 7 (quoting Purchase Agreement at 2).) Even if an agency relationship existed, Keystone asserts that Plaintiffs would still be required to directly notify Keystone under the following provision in the Warranty Guide:

> If the dealer is unable to resolve any warrantable issues or provide assistance in arranging repairs in a timely manner, please contact: Customer Service Department, Keystone RV Company, P.O. Box 2000, Goshen, Indiana 46527. You may contact us using the "My Keystone" App or at www.keystonerv.com or by calling Owner Relations at 866.425.4369. Upon receipt of notice of a claim where a dealer was unable or unwilling to resolve your issue, Keystone may then direct you to another dealer or service center.
> . . .
> If a dealer is unable to correct any covered defect that you believe substantially impairs the value, use, or safety of your RV, **you must, to the extent permitted by law, notify Keystone directly of the dealer's failure to successfully repair the covered defect so that Keystone can become directly involved** with the purpose of performing a successful repair to the covered defect.

(*Id.* at 8 (quoting Warranty Guide at 13) (emphasis added).)

The Warranty Guide is clear: if the dealer is unable to fix the vehicle, Plaintiffs are required to notify Keystone so that it may attempt to repair the vehicle. Thus, the question is whether Plaintiffs have adequately alleged that they provided notice to

14

Keystone. The Complaint states that Camping World is "an authorized sales, warranty service, and repair agent" of Keystone. (Compl. ¶ 4.) However, Plaintiffs do not allege any facts that establish an agency relationship between Camping World and Keystone. Nor do Plaintiffs confront the express language in the contract that the dealer is not an agent of the manufacturer. The statement that Camping World is an agent of Keystone is a legal conclusion and is not entitled to deference. *See Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (finding that a plaintiff must allege at least some facts demonstrating an agent-principal relationship). Plaintiffs also do not allege that they directly notified Keystone of the defects. Thus, Plaintiffs' MMWA claim against Keystone will be dismissed.

### B. Plaintiffs' VCPA claim is barred by the parties' choice of law provision and fails as a matter of law.

Keystone argues that Plaintiffs' VCPA claim fails because it is barred by the choice of law clause in the Warranty Guide and it is inadequately pled. (Keystone's Mem. in Supp. at 2–3, 5–7.) The relevant provision states that all claims related to the warranty shall be governed by Indiana law. (Warranty Guide at 7.) This provision is binding. *See Alman Indus., LLC v. Supreme Metal Sols., Inc.*, No. 4:20-cv-188, 2021 WL 2877124, at *3 (E.D. Va. July 7, 2021) ("In Virginia, if a contract includes a choice of law provision, that provision governs." (citing *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 804 (1990))). Thus, Plaintiffs' VCPA claim against Keystone fails because it is brought under Virginia law.

Plaintiffs respond that the choice of law clause is not a valid contractual provision and that, even if it was, it is unconscionable. (Resp. in Opp'n to Keystone's Mot. ¶¶ 8–10.) Plaintiffs attach a declaration to their Response where they allege that they were not provided with a copy of either the Warranty Guide or the owner's manual prior to the completion of purchase. (Decl. ¶ 4, ECF No. 30-2.) They also state that they were not told that Indiana law would govern the contract and that, if they had been told, they would not have purchased the camper. (*Id.* ¶ 5.) Based on this, they argue that the choice of law provision is not a mutually agreed upon term and is also unconscionable. (Resp. in Opp'n to Keystone's Mot. ¶¶ 8–10.)

The issue with Plaintiffs' argument is that they do not allege any of these facts in their Complaint. When evaluating a motion to dismiss, a court may only consider documents outside a complaint if they are "integral to the complaint." *Goines*, 822 F.3d at 166. There is no indication that Plaintiffs' Declaration is integral to the Complaint, especially considering that it largely recites new facts not included in the original Complaint. Thus, it is inappropriate for the Court to consider Plaintiffs' Declaration at this stage. The Complaint alone does not allege sufficient facts to support either an unconscionability or an unenforceability argument. Additionally, Plaintiffs fail to adequately plead their VCPA claim. *See supra* Section III.B.

Finally, even if Plaintiffs' VCPA claim was adequately pled, it would fail as a matter of law. Plaintiffs allege that Camping World is an authorized agent of Keystone. (Compl. ¶ 4; Resp. in Opp'n to Keystone's Mot. ¶¶ 12–14.) Thus, Plaintiffs assert that,

16

when they requested repair records from Camping World, they, in essence, requested them from Keystone. However, as discussed above, Camping World's actions during the repairs are not covered by the VCPA. *See supra* Section III.B. Accordingly, Plaintiffs' VCPA claim against Keystone will be dismissed.

## V. CONCLUSION

In sum, the Court will grant Defendants' Motions to Dismiss. Where appropriate, Plaintiffs will be allowed to amend their Complaint to cure its defects.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 7, 2024
Richmond, VA